UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

        Plaintiffs,

v.

Nabil Hamadeh Abumayyaleh
 a/k/a Nabel Mahmoud Hamadeh
 a/k/a Billy Abumayyaleh,

        Defendant.

Criminal No: 05-0425 (JRT/JJG)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

Elizabeth Peterson, Assistant United States Attorneys, on behalf of Plaintiff United States of America

Daniel Gerdts, Esq., for Defendant Nabil Hamadeh Abumayyaleh

---

JEANNE J. GRAHAM, United States Magistrate Judge

    The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on January 19, 2006, on the pretrial motions of The United States of America (the "Government") and Defendant Nabil Hamadeh Abumayyaleh. This matter is scheduled to be tried before the Honorable John R. Tunheim, United States District Court for the District of Minnesota, and February 27, 2006. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I.    INTRODUCTION**

    On December 20, 2005, defendant, Nabil Hamadeh Abumayyaleh, was named in a one-count

1

indictment charging him with being a person convicted of a crime punishable by imprisonment for a term exceeding one year, who did knowingly possess a firearm in and affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1). Forfeiture allegations are also included in the indictment. After a hearing before the Honorable Franklin L. Noel, Magistrate Judge, United States District Court for the District of Minnesota, Defendant was ordered detained.

This Court held a pretrial motions hearing on January 19, 2006, at which defendant was present and represented by counsel. Both parties filed pretrial motions. Two witness testified for the Government at the hearing: Detective Justin Alan Tourville, a detective with the City of Crystal, Minnesota, and Agent Ralph Clark, a task force member with the Hennepin County Sheriff's Department. The following exhibits were marked and admitted by the Court for the purposes of the hearing:

| | |
|---|---|
| Government Exhibit #1: | Application and supporting affidavit and search warrant for premises located on Bass Lake Road in Crystal, Minnesota; |
| Government Exhibit #2: | Application and supporting affidavit and search warrant for premises located on Nevada Avenue North in Brooklyn Park, Minnesota; and |
| Government Exhibit #3: | CD recording of inside the squad car of Detective Tourville during the 11/28/05 transport of defendant. |

Defendant requested and received permission to file a post-hearing memorandum by January 26, 2006. The Government requested and received permission to file a post hearing memorandum by February 2, 2006. The parties have filed their memoranda in a timely fashion. The Court addresses the parties' dispositive motions in this Report and Recommendation. Defendant's non-dispositive motions are addressed in a separate Order.

## II.    FACTUAL BACKGROUND

Deputy Ralph Clark of the Hennepin County Sheriff's Department and a member of the Narcotics Unit received a tip from a confidential informant ("CI1") that CI1 had, on several occasions, purchased stolen goods from defendant Abumayyaleh.  After receiving additional information from officers of the Crystal Police Department regarding their suspicions that defendant might be engaging in the purchase of stolen property, Deputy Clark began an investigation into the activities of the defendant.  During his investigation, Deputy Clark learned through a criminal history check that due to a prior conviction for theft of a motor vehicle defendant Abumayyaleh was prohibited from possessing firearms.

Deputy Clark's investigation of the defendant included the use of second confidential informant ("CI2") and an undercover police officer ("UCO").  Over a ten month period, and under the direction of Deputy Clark, CI2 met with the defendant at defendant's place of business on Bass Lake Road and participated in the buying and selling of "stolen" goods with the defendant.  The stolen goods in these transactions generally consisted of video games and DVD movies.  During this time, CRI sold the defendant over 60 Playstation 2, X-Box video games and DVD movies.  Deputy Clark obtained the consent of CI2 wear body recorders during CI2's interactions with the defendant and defendant conversations with CI2 were subsequently recorded.

At some point, CI2 introduce an undercover deputy with the Hennepin County Sheriff's Office ("UCO") to the defendant.  The UCO consented to wearing a body recorder and Deputy Clark directed the UCO to meet with the defendant for the purpose of selling "large stolen" items to the defendant. The UCO met with the defendant at the Bass Lake Road business on numerous occasions. During one such visit, a conversation about a potentially dangerous person in the parking lot led to the defendant telling the

UCO that he had weapons hidden all over the store.

For the next six months, the UCO brought what he purported to be goods stolen from Chicago to the defendant's business, and sold the items to the defendant for a price far less than retail. These items included laptop computers, flat screen televisions, X-Box Gaming Systems, DVD players, and various articles of high-end clothing. During the first purchase of clothing, the UCO asked the defendant what size clothing to acquire, to which the defendant responded by giving the UCO his own pants size.

During one of the UCO's deliveries of the "stolen" goods to the defendant at his place of business, the UCO placed two handguns in the trunk of his vehicle with the items he was to deliver to the defendant, and where he anticipated the defendant would see them. When that eventually happened, the defendant inquired about the handguns, and the UCO told him the guns were not for sale because another buyer had already asked for the guns. The defendant told the UCO to let him know if his other buyer for the guns fell through.

On October 29, 2005, Deputy Clark and other Narcotics Unit agents conducted physical surveillance of the defendant. The agents observed the lights go off at the Bass Lake Road store at approximately 10:30 p.m., and the vehicle known to be driven by the defendant exit the parking lot. Agents followed the vehicle, a red 1993 GMC Suburban, to another business establishment, Cup Foods. After observing the Suburban parked in the back lot at this business, agents observed the lights go off in the store and the employees exited. When the defendant left the business, agents followed the red Suburban, again driven by the defendant, out of the parking lot and to a residence located on Nevada Avenue North in Brooklyn Park, Minnesota. The officers recognized several vehicles parked at the residence that they knew to be driven by defendant's younger brothers.

The following morning, at 7:45 a.m., an officer observed the defendant exit the Nevada Avenue residence by opening the garage door with the automatic garage door opener. The Officer observed frost on the red GMC Suburban. A check of the County Property tax records revealed that the Nevada Avenue residence is owned by the defendant's 22 year-old brother, who worked as a clerk at the Cup Foods store. The records indicated that the brother purchased the property for $288,000 when he was nineteen. Postal inspectors verified that the defendant received mail at the Nevada Avenue residence.

For one week prior to the execution of the search warrant, Deputy Clark conducted early morning surveillance at the Nevada Avenue residence. During his surveillance, Deputy Clark observed the red Suburban parked in the driveway, and observed the vehicle to be frost-covered on each occasion.

On November 10, 2005, the UCO went to the defendant's place of business to deliver another order of "stolen" goods. During the course of the conversations with the defendant, the UCO mentioned that he was having some problems with some jealous people and would be carrying a weapon on his person on some occasions. When the UCO told the defendant he would be going to Chicago again, the defendant asked the UCO why he had not gotten the defendant a gun yet. According to the UCO, the telephone in the store rang before he had a chance to answer the defendant.

On November 16, 2005, the UCO again visited the defendant at his place of business on Bass Lake Road and observed Playstation 2 and X-Box games behind the counter for sale. The UCO recognized these items as the same as those he sold to the defendant on earlier occasions. While the UCO was in the store, the defendant said he was staying at his "cousin's house," and told the UCO that the clothing he had purchased from the UCO as well as one of the flat screen televisions, still boxed up, were at that house.

5

On November 22, 2005, search warrants were issued for both the Bass Lake Road business and the Nevada Avenue residence. These warrants were executed on November 28, 2005. City of Crystal Detective Justin Tourville assisted in the execution of the search warrant on the Bass Lake Road business by blocking the entrance of the parking area to detain anyone attempting to exit the premises and prevent others from entering the lot. The defendant was arrested by the officers executing the warrant and was handcuffed and placed in the doorway of the store.

Detective Tourville then offered to transport the defendant to the police station to allow the other officers time to complete their search without having to also attend to the defendant. Defendant Abumayyaleh was searched by the detective and then placed in the back of the detective's squad car. Detective Tourville's squad car is equipped with a video camera and audio recording device, which the detective turned on as he drove out of the parking lot. During the transport of the defendant, Detective Tourville did not administer *Miranda* warnings. The recording from the squad car does not contain evidence of any questioning by the detective, with the exception of an inquiry about the temperature of the car and the defendant's personal comfort. The recording does contain evidence of unprompted statements by the defendant regarding his intentions to "get" the person who brought a rifle into his shop. The recording continues until the time the defendant is removed from the squad car at the police station.

### III.   DISCUSSION

Defendant brings three dispositive motions, including (1) Motion to Suppress All Evidence Obtained Through Unlawful Searches and Seizures; (2) Motion to Suppress Statements Made by Defendant; and (3) Motion to Suppress All Electronic Evidence and Any Evidence Derived Therefrom.

    **1.**    **Motion to Suppress All Evidence Obtained Through Unlawful**

**Searches and Seizures**

Defendant moves to suppress all evidence obtained as a result of illegal searches and seizures of defendant's person, place of business and residence.  Defendant contends the searches were conducted without probable cause.   In this case, two search warrants were executed.  Law enforcement officers executed search warrants on November 28, 2005, on a residence located on Nevada Avenue in North Brooklyn Park, and on a business located on Bass Lake Road in Crystal.  In his post-hearing memorandum, defendant raises specific objections to the legality of the search of the Nevada Avenue residence.  Defendant argues that the affidavit's description of an observation of the defendant driving a car registered to someone else to a residence owned by someone else and staying as an overnight guest is insufficient evidence to support a finding of probable cause to search the Nevada Avenue residence.[1]

A warrant must be supported by probable cause to conduct a search or to seize evidence of a crime. U.S. Const. Amend IV.  The Fourth Amendment requires that a neutral and detached magistrate determine whether law enforcement officers have probable cause to conduct a search.  Warden v. Hayden, 387 U.S. 294, 301-302 (1967); United States v. James, 353 F.3d 606, 613 (8th Cir. 2003).  Probable cause exists when there are sufficient facts to justify a prudent person's belief "that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005).

---

[1]Because the supporting affidavit for the Bass Lake Road search warrant  is substantially the same as the affidavit for the Nevada Avenue search warrant, and the material differences between the two affidavits are addressed in the Court's discussion of the Nevada Avenue search, the Court will address the sufficiency of both warrants in a single discussion.

Facts in a supporting affidavit must provide the issuing judge with a "substantial basis" to believe that a "fair probability" exists of finding evidence of a crime. Gates, 462 U.S. at 238-39. When a judge relies solely on an affidavit to issue a warrant, the judge may consider only information within the "four corners" of the affidavit. United States v. Wells, 347, F.3d 280, 286 (8th Cir. 2003). Probable cause is determined from the "totality of the circumstances" presented by the application for the search warrant, see Gates, 462 U.S. at 238. Courts reviewing a decision to issue a search warrant give great deference to the decision to issue the warrant and "due weight to inferences drawn" by issuing judges and local law enforcement. Ornelas v. United States, 517 U.S. 690, 699 (1996).

Defendant's assertions that the affidavits supporting the search warrants are without sufficient factual evidence to support the searches of the Nevada Avenue residence and the Bass Lake Road business are without merit. First, the affidavit contains sufficient evidence that defendant purchased and possessed goods from the UCO that were purported to be "stolen." The affidavit describes in great detail a series of transactions between the UCO and defendant that took place at the business located on Bass Lake Road. The affidavit specifically details numerous purchases of high-end electronics and clothing from the UCO purported to be "stolen" from Chicago. The affidavit indicates a number of these purchases occurred in the weeks leading up to the execution of the search warrants on the business and the residence. The Court finds these circumstances alone provide a sufficient basis for finding probable cause to search the business on Bass Lake Road. Thus, the Court will focus on the Nevada Avenue search.

The Court finds that the affidavit contains sufficient evidence that the defendant had personal possession of some of the stolen goods, and that he resided at the Nevada Avenue. The affidavit

indicates Defendant Abumayyaleh provided his own pants size to the UCO when the UCO inquired about sizes for the "stolen" clothing to be acquired for sale to defendant. Defendant Abumayyaleh, himself, told the UCO that some of the items he had purchased from the UCO were located at the residence where he was staying. The affidavit indicates postal inspectors verified Defendant Abumayyaleh receives mail at the Nevada Avenue address. Moreover, surveillance officers observed the defendant drive from his place of business in a red GMC Suburban to the Nevada Avenue residence on October 18, 2005, and observed the defendant exit the residence the following morning by opening the garage door and re-entering the red Suburban. Surveillance officers observed frost on the Suburban, indicating the probability it had been parked at that residence all night. Finally, on several days during the week prior to the execution of the search warrant, the affiant, Deputy Clark, conducted surveillance at the Nevada Avenue residence and observed the same Suburban, covered with frost, at the residence in the early morning hours.

Based upon these factual circumstances as described in the submitted supporting affidavit, the Court finds the issuing judge had a substantial basis to believe Defendant Abumayyaleh was residing at the Nevada Avenue residence and that he was keeping some of the stolen property at that location. Thus, the Court finds the search warrants were supported by probable cause.

Even if the Court were to determine the supporting affidavits did not support probable cause for the searches, a finding it has not made, the Court finds the good faith exception to the warrant requirement applies, because the officers executing the warrants acted in good faith reliance on the warrant. See United States v. Leon, 486 U.S. 897, 922-23 (1984). Upon reviewing the affidavits, the Court has determined that they did not contain deliberately or recklessly false information. See id. at

923. There is no evidence that the issuing judge failed to act in a neutral or detached manner. See id. The affidavits were not so lacking in probable cause that reliance on them by the officers was entirely unreasonable. See id. Finally, the warrants were not so facially deficient that the officers unreasonably presumed them to be valid. See id.

For all of the above reasons, the court recommends that Defendant Abumayyaleh's Motion to Suppress All Evidence Obtained Through Unlawful Searches and Seizures be denied.

### 2. Motion to Suppress Statements Made by Defendant

Defendant filed a motion to suppress all statements made, and any evidence derived from such statements. Defendant contends all such statements were obtained through unlawful and coercive interrogations, were not given voluntarily, were the fruit of an unlawful seizure, and were obtained without compliance with the requirements of the *Miranda* case, all in violation of defendant's rights under the Fifth and Sixth Amendments to the United States Constitution and applicable federal rules and laws.

At the motions hearing, the Government indicated that there were no statements made by the defendant that were the subject of interrogation. The Government then indicated, however, that the defendant made voluntary statements following his arrest at the Bass Lake Road business during his transport in a police car to the police station regarding his intention to "get the guy" who brought the firearm into his store." The statements were recorded on a audio recording device and provided to defense counsel prior to the hearing. Also at the hearing, defense counsel indicated that he had not had the opportunity to review the recording, and would therefore challenge the statements as illegally obtained.

The parties here do not contest that when the defendant made his statements he was in custody and had not received a *Miranda* warning. The sole issue, therefore, is whether any of the actions by the transporting officer constituted an interrogation.

The requirements of *Miranda* are triggered only when a defendant is both in custody and being interrogated. *United States v. Boyd,* 180 F.3d 967, 976 (8th Cir.1999). Police actions constitute interrogation when an officer engages in express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). This standard incorporates words or actions by police, other than those normally incident to custody, that police know are likely to result in an incriminating response. *Id.*; *see also Mendoza-Gonzalez,* 363 F.3d 788, 795 (8th Cir. 2004). A statement made by a suspect that is voluntary and not in response to interrogation is admissible with or without the giving of *Miranda* warnings. *U.S. v. Head*, 407 F.3d 925, 928 (8th Cir. 2005) *(citing Boyd,* 180 F.3d at 977).

In this case, the transporting officer, Detective Tourville, testified that he did not question the defendant during his transport to the police station following the defendant's arrest. Detective Tourville described the defendant as "agitated" and angry at the guy who came into his store with the rifle. The detective testified that the defendant made voluntary statements regarding his intention to "get the guy who came into the store with the rifle." The detective stated that he did not ask any follow-up questions regarding defendant's statements.

The recording of the transport, Government's exhibit 3, substantiates the detective's testimony at the hearing. At the beginning of the recording, Detective Tourville appears to be responding to an inquiry by the defendant (but not on the recording), saying "weapons charge," after which he immediately states "I don't know why." The defendant interrupts the detective's statement and begins

11

a lengthy monologue about his opinion of the person who brought the rifle into his store stating that he would "get his ass." During the remainder of the transport, Detective Tourville can be heard talking on his police radio and asking the defendant if he is warm enough. The defendant, on the other hand, repeatedly makes threatening statements with no indication of being prompted by the detective.

Under these circumstances, the Court finds Defendant's statements during his transport were made voluntarily, and not in response to interrogation by Detective Tourville. Accordingly, these statements are admissible with or without the giving of *Miranda* warnings. As these are the only statements identified by the parties are at issue in defendant's motion, the Court recommends defendant's motion be denied.

### 3. Motion to Suppress All Electronic Evidence and Any Evidence Derived Therefrom

Defendant moves to suppress all electronic evidence and any evidence derived therefrom. Defendant claims there are numerous audio and video recordings made by law enforcement during the course of the two year investigation of the defendant, and that these recording were made without judicial approval or oversight. The Government states no electronic surveillance was undertaken in this case. The Government admits that both CI2 and the UCO wore body wires while engaging in transactions with Defendant Abumayyaleh, and that the UCO at times wore a body video. However, the Government asserts that all of these recordings obtained by CI2 or the UCO were acquired with their consent, and the recordings were, therefore, not unlawfully obtained.

It is not unlawful to intercept a communication if a party to the communication has given prior consent to the interception. 18 U.S.C. § 2511(2)(c) (2000); *U.S. v. Corona-Chavez*, 328 F.3d 974,

978 (8th Cir. 2003).  Nor does such an interception violate the Fourth Amendment. *Id. (citing United States v. White,* 401 U.S. 745, 753 (1971)). The government bears the burden of proving consent. *Corona-Chavez*,328 F.3d *at 978 (citing United States v. Gomez,* 900 F.2d 43, 44 (5th Cir.1990)).

The Government called Deputy Clark to testify at the motions hearing regarding the consent to monitoring by CI2 and the UCO.  Deputy Clark is a member of the Hennepin County Sheriff's office and of the task force investigating the activities of the defendant.  Deputy Clark testified that CI2 and the UCO wore the body recorders at his direction, and were, therefore acting under color of law at the time the recording were made.  Deputy Clark further testified that he obtained the consent of both CI2 and the UCO to engage in the recordings of their interactions with defendant via the body wire and body video.

Defendant's post-hearing memorandum raises no specific objections to the Government's proffered evidence of consensual monitoring, and the Court finds the testimony of Deputy Clark to be both credible and sufficient to establish the consent of CI2 and the UCO.  Accordingly, the Court recommends defendants motion to suppress be denied.

## IV.   CONCLUSION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Motion to Suppress All Evidence Obtained Through Unlawful Searches and Seizures (Doc. No. 14) be **DENIED;**

2. Motion to Suppress Statements Made by Defendant(Doc. No. 15) be **DENIED,** and

3. Defendant's Motion to Suppress All Electronic Evidence and Any Evidence Derived Therefrom. (Doc. #18) be **DENIED**.

Dated: February 10, 2006               s/Jeanne J. Graham

                                       _____
                                       JEANNE J. GRAHAM
                                       United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by March 2, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.