## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 05-425 (JRT/JJG) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| NABIL H. ABUMAYYALEH, | |
| Defendant. | |

Elizabeth C. Peterson, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Howard I. Bass, **BASS & PECK**, PLLC, 14101 Southcross Drive West, Suite 100, Burnsville, MN 55337, for defendant.

Defendant was named in a one-count indictment charging him with being a felon in possession of a firearm. This matter is before the Court on defendant's motions to suppress evidence. In a Report and Recommendation dated February 10, 2006, United States Magistrate Judge Jeanne J. Graham recommended that defendant's motions to suppress be denied. The defendant timely objected to the Report and Recommendation, and urges this Court to grant his Motion To Suppress All Evidence Obtained Through Unlawful Search and Seizures. The Court has conducted a de novo review of the objections pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.2(b). For the

reasons discussed below, the Court adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

Defendant Nabil Hamadeh Abumayyaleh was named in a one-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Forfeiture allegations are also included in the indictment. Defendant filed three motions to suppress, and the Magistrate Judge recommended that this Court deny all the motions. Defendant has objected only to the Magistrate Judge's recommendation on his Motion To Suppress All Evidence Obtained Through Unlawful Search and Seizure, and only as to the search of his place of business, so the Court confines its discussion accordingly.[1]

Deputy Ralph Clark of the Hennepin County Sheriff's Department and a member of the Narcotics Unit received a tip from a confidential informant ("CI1") that CI1 had, on several occasions, purchased stolen goods from defendant. After receiving additional information from officers of the Crystal Police Department regarding their suspicions that defendant might be engaging in the purchase of stolen property, Clark began an investigation into the activities of defendant. He learned through a criminal history check that due to a prior conviction for theft of a motor vehicle, defendant was prohibited from possessing firearms.

---

[1] Because defendant has not objected to the Magistrate Judge's Report and Recommendation in regards to his Motion to Suppress Statements Made by Defendant [Doc. No. 15] and Motion to Suppress All Electronic Evidence and Any Evidence Derived Therefrom [Docket No. 18], the Court adopts the well-reasoned Report and Recommendation and denies these motions without discussion.

Clark's investigation of defendant included the use of a second confidential informant ("CI2") and an undercover police officer. Over a ten-month period, and under the direction of Clark, CI2 met with the defendant at defendant's place of business, Crystal Foods, and participated in the buying and selling of "stolen" goods with defendant. At some point CI2 introduced the undercover police officer to defendant, and the undercover officer met with defendant at Crystal Foods on numerous occasions. During one such visit, defendant told the undercover officer that he had weapons hidden all over the store. Over a six month period, the undercover police officer brought what he purported to be goods stolen from Chicago to defendant's business, and sold the items to defendant for a price far less than retail.

During one of the undercover police officer's delivery of "stolen" goods, the officer placed two handguns in the trunk of his vehicle with the items he was to deliver to defendant, where he anticipated the defendant would see them. Defendant saw the guns and expressed interest in buying them.

On November 10, 2005, the undercover police officer went to defendant's place of business to deliver another order of "stolen" goods. When the officer mentioned that he would be carrying a weapon on his person, defendant asked why he had not yet gotten defendant a gun.

On November 22, 2005, search warrants were issued for defendant's business and the residence where officers suspected that he was living. These warrants were executed on November 28, 2005.

## ANALYSIS

**I.  Motion to Suppress All Evidence Obtained Through Unlawful Searches and Seizures at Defendant's Place of Business**

A warrant to conduct a search or to seize evidence must be supported by probable cause.  U.S. Const. Amend. IV.  Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  A search must be upheld if the issuing judge had a "substantial basis" for finding the existence of probable cause.  *Gates*, 462 U.S. at 239.  Considerable deference should be given to the issuing judge's determination of probable cause.  *Id.* at 236.

The Magistrate Judge concluded that the search warrant provided sufficient information to support a finding of probable cause to search defendant's business.  The affidavit in support of the warrant application sets forth a detailed history of defendant's numerous purchases of items from a confidential informant and undercover police officer at the Crystal Foods store, and statements by defendant demonstrating that he believed those items to be stolen.  Defendant asserts in his objection that probable cause is lacking because the warrant application discusses defendant's controlled purchases of "purportedly stolen" property, and that such facts "do not create a fair probability to believe that evidence of a crime of receiving stolen property would be found at Crystal Foods because none of the property described in the warrant is even alleged to have been stolen."  One of the essential elements for the offense of receiving stolen property is that

the property is actually stolen. *See* Minn. Stat. § 609.53; *State v. Carter*, 196 N.W.2d 607, 609 (Minn. 1972).

Defendant's argument fails to recognize that the affidavit also contains facts that demonstrate a fair probability that defendant was engaging in crimes involving the receipt and sale of stolen property that do not involve the controlled purchases orchestrated by the police. The affidavit includes information that CI1 "on several occasions" bought and sold stolen items from defendant. The affidavit also discusses an incident where officers observed an unidentified male enter Crystal Foods with a handful of what appeared to be stolen property, but the individual left when defendant gave him a "disapproving look." The officers believed from the circumstances that defendant would have purchased the items if they were not present. In addition, defendant's statements and actions indicate that he had some experience with buying and selling stolen property. The Court finds that these facts provide a sufficient basis for finding probable cause to search defendant's place of business.

Defendant argues that even if probable cause existed for issuing the search warrant, the warrant did not authorize the seizure of any firearms or ammunition. The Fourth Amendment mandates that search warrants particularly describe the things to be seized, so that nothing is left to the discretion of the officer executing the warrant. *Marron v. United States*, 275 U.S. 192, 196 (1927). Therefore, as a general rule, police may only seize items described in the search warrant, absent an exception to the warrant requirement. *United States v. Robbins*, 21 F.3d 297, 300 (8th Cir. 1994). The plain view doctrine provides one established exception. Under the plain view doctrine, police

officers may seize items in plain view if the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, the item is in plain view, and its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990).

Defendant argues that the search warrant for the "purportedly stolen" property was in fact "obtained in bad faith and used as an excuse to seize firearms and ammunition." Defendant points to the fact that the officers delayed the execution of the search warrant until after defendant finally purchased a gun from the undercover officer. Defendant relies on *United States v. Wright*, 641 F.2d 602, 605-606 (8th Cir. 1981). In *Wright*, the Eighth Circuit held that the seizure of a shotgun was permissible under the plain view doctrine because the discovery was "inadvertent" and "there is no indication in the record that the search warrant for controlled substances was obtained in bad faith or that it was used as an excuse to seize the firearm in plain view and thus evade the warrant requirement." *Wright*, 641 F.2d at 605-06.

Defendant's argument that the search for the stolen property was illegal because it was used as an excuse to seize the firearm is unpersuasive. The United States Supreme Court has explicitly rejected the notion that the Fourth Amendment requires the discovery of an object in plain view to be "inadvertent." *Horton v. California*, 496 U.S. 128, 138-40 (1990); *see United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). If an officer "has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first."

*Horton*, 496 U.S. at 139; *cf. Whren v. United States*, 517 U.S. 806, 812-13 (1996) (noting that the Court has repeatedly held that an ulterior motive does not make an otherwise legal search or seizure illegal).

The Court concludes that firearms and ammunition were properly seized pursuant to the plain view doctrine.  The officers were lawfully at defendant's business executing the warrant for the "stolen" property and documents relating to activities of receiving and concealing stolen property.  The items were plainly visible during this search: one had just been purchased from the undercover officer and was placed in a bin, and the other firearms were found in a desk drawer in the store office where officers found identification documents, which were covered by the search warrant.  Defendant concedes that given defendant's criminal history, the incriminating nature of the firearms and ammunition seized was immediately apparent.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** defendant's objection [Docket No. 26] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 25].  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress All Evidence Obtained Through Unlawful Searches and Seizures [Docket No. 14] is **DENIED**;

2. Defendant's Motion to Suppress Statements Made by Defendant [Docket No. 15] is **DENIED**;

- 8 -

3. Defendant's Motion to Suppress All Electronic Evidence and Any Evidence Derived Therefrom [ Docket No. 18] is **DENIED**.

DATED: May 26, 2006                       s/ John R. Tunheim        _
at Minneapolis, Minnesota.                   JOHN R. TUNHEIM
                                                         United States District Judge